AF Approval [signature]                                        Chief Approval [signature]

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO. 8:22-cr-00441-CEH-LSG

KIMBERLY KIEHL

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, Kimberly Kiehl, and the attorney for the defendant, David Joffe, Esq., mutually agree as follows:

A.      **Particularized Terms**

1.      Count Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the Superseding Information. Count One charges the defendant with mail fraud, in violation of 18 U.S.C. § 1341. Count Two charges the defendant with causing counterfeit drugs to be made, sold, and held for sale, in violation of 21 U.S.C. §§ 331(i)(3) and 333(a)(2).

2.      Maximum Penalties

Count One carries a maximum sentence of 20 years' imprisonment, a fine of $250,000, or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is greater, a term of supervised release of not more

Defendant's Initials [initials]

than 3 years, and a special assessment of $100. Count Two carries a maximum sentence of 3 years' imprisonment, a fine of $10,000, a term of supervised release of not more than 1 year, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

    3.    <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offenses with which the defendant has been charged and to which the defendant is pleading guilty.

The elements of Count One are:

| | |
|---|---|
| <u>First</u>: | the defendant knowingly devised or participated in a scheme to defraud someone, or obtain money or property, using false or fraudulent pretenses, representations, or promises; |
| <u>Second</u>: | the false or fraudulent pretenses, representations, or promises were about a material fact; |
| <u>Third</u>: | the defendant intended to defraud someone; and |
| <u>Fourth</u>: | the defendant used a private interstate carrier by depositing or causing to be deposited with the carrier something meant to help carry out the scheme to defraud. |

The elements of Count Two are:

| | |
|---|---|
| <u>First</u>: | the defendant forged, counterfeited, simulated, or falsely represented, or without proper authority used any mark, |

Defendant's Initials _____        2

stamp, tag, label, or other identification device authorized or required; and

Second:    the defendant acted with the intent to defraud or mislead.

4.    Indictment Waiver

Defendant will waive the right to be charged by way of superseding indictment before a federal grand jury.

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge the defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to any victims as determined by the Court.

7.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this

Defendant's Initials _____    3

Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.     Acceptance of Responsibility—Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _____     4

9.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2323(b), 21 U.S.C. § 334, and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, $204,730 in total proceeds the defendant admits she obtained, as the result of the commission of the offense charged in Count One to which the defendant is pleading guilty, as well as approximately $47,773 seized from the defendant's residence on or about October 14, 2021, which constitutes proceeds of the offense. The net proceeds from the forfeiture of any specific asset will be credited to and reduce the amount the United States shall be entitled to forfeit as substitute assets pursuant to 21 U.S.C. § 853(p).

The defendant acknowledges and agrees that (1) the defendant obtained $204,730 as a result of the commission of the offenses and (2) as a result of the acts and omissions of the defendant, the proceeds not recovered by the United States through the forfeiture of the directly traceable assets listed herein have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offenses of conviction and, further, the defendant consents to, and agrees not

Defendant's Initials _____          5

to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury Offset Program.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and

Defendant's Initials _____    6

will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture (including substitute assets) and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of

Defendant's Initials _____

7

a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

10.    Abandonment of Property

The United States of America and defendant hereby agree that any misbranded drugs or counterfeit drugs or equipment seized from the defendant and currently in the custody and/or control of the Food and Drug Administration (FDA), the Department of Homeland Security (DHS), or other appropriate agency,

Defendant's Initials _____                    8

were properly seized and are subject to forfeiture to the government according to 18 U.S.C. § 2323(b) and/or 21 U.S.C. § 334, and/or that they constitute evidence, contraband, or fruits of the crime to which she has pled guilty. As such, defendant hereby relinquishes all claim, title and interest she has in these items to the United States of America with the understanding and consent that the Court, upon approval of this agreement, hereby directs the FDA, DHS, or other appropriate agency, to cause the items described above to be destroyed forthwith without further obligation or duty whatsoever owing to defendant or any other person.

As part of the plea agreement in this case, defendant hereby states under penalty of perjury that she is the sole and rightful owner of the property, and that defendant hereby voluntarily abandons all right and claim to and consents to the destruction of:

a. 20 boxes labeled Dermal Injection Rejevnesse, one shipping labeled To: David Kiehl, From: Singapore Post Center, Post Office, PO Box 711, Singapore 914024;

b. 10 boxes labeled Botox 100 inito w/packaging, Forever single dose vial 3 cans;

c. Shipping box with a label containing Botox 100 unito, 1 J-Pro cream and document, addressed To: Patricia Beaumont, From: Focus Beauty, PO Box 88, Kathleen, FL 33849;

d. 2 items labeled J-Pro Cream and document;

e. 12 boxes labeled Juvederm Voluma with Lidocaine;

f. 6 boxes labeled Godfaller Deep Composition;

g. 11 boxes labeled Aqua Secret Derm, Injectable Hyaluronic Acid;

Defendant's Initials _____                    9

.

h.     16 boxes labeled Restylane Lyft Lidocaine;

i.     12 boxes labeled Godfaller Wrinkle Fighter;

j.     3 boxes labeled Restylane Lidocaine;

k.     3 boxes labeled Restylane Fynesse;

l.     9 boxes labeled Revolax Fire w/Lidocaine;

m.     5 boxes labeled Restylane Defyne;

n.     5 boxes labeled Yvolre Volume Plug;

o.     5 boxes labeled Godfaller Resurrection;

p.     6 boxes labeled Kinderm Fire;

q.     9 boxes labeled Restylane Perlane;

r.     6 boxes labeled Restylane Refyne;

s.     6 boxes labeled Aqua Secret Dep Injectable Hyalaronic Acid;

t.     7 boxes labeled Godfaller Meso;

u.     13 boxes labeled Restylane;

v.     3 boxes labeled Rejeunesse shape with lidocaine;

w.     6 boxes labeled Restylane Kysse;

x.     11 boxes labeled Revolox Dep;

y.     2 boxes labeled Revolax Sub-Q with Lodocaine;

z.     30 boxes labeled Juverderm Ultra 4;

aa.     22 boxes labeled Aqua Secret Fine and shipping box;

bb.     17 boxes labeled Firederm Dep;

cc.     26 items labeled Godfaller Derm;

Defendant's Initials _____              10

dd.    16 boxes labeled Restylane Lyft Lidocaine;

ee.    53 boxes labeled Mt Roller;

ff.    54 boxes labeled Mt Roller;

gg.    9 boxes labeled beauty Monster;

hh.    6 boxes labeled Diamond Peeling Kit;

ii.    1 box labeled Diamond Peeling Kit;

jj.    6 boxes labeled Diamond Peeling Kit;

kk.    4 boxes labeled Spot Removal Pen;

ll.    7 pieces labeled Lipo lab PPC Solutions;

mm.    1 box labeled Braidzig 3 ml oral syringes;

nn.    Various miscellaneous hypodermic needles;

oo.    Terumo Europe hypodermic needle;

pp.    99 boxes labeled J-Pro Cream;

qq.    1 box labeled F and E Tattoist Painless Skin Cream;

rr.    1 box containing 10 boxes labeled Multi-Functional Beauty Device;

ss.    11 boxes labeled Prost Vitamin B 12 Injections;

tt.    3 boxes labeled F & E Tattoist Skin Painless Cream;

uu.    9 bottles containing an unknown substance;

vv.    41 bottles labeled Sodium Chloride;

ww.    9 empty Juverderm Ultra boxes;

xx.    1 vial labeled lidocaine HCL 1000mg;

yy.    3 boxes labeled 38 pieces Liporase I.M;

Defendant's Initials _____                11

zz.   6 pieces of Dr. Numb Cream;

aaa.   1 box labeled 68 Hydra Needle (20 needles each);

bbb.   Miscellaneous ampules in box;

ccc.   1 box labeled Restylane Lyft Lidocaine;

ddd.   2 boxes labeled Gluthathione Injection;

eee.   7 boxes labeled Sculptra (2 vials per box);

fff.   23 Dr. Numb 10% empty boxes;

ggg.   3 Whitening+ 1.0 ML kits;

hhh.   6 Dr. Numb 5% empty boxes;

iii.   3 Juvederm Ultra 3 kits;

jjj.   5 bags labeled Firmoso (29GX38MM);

kkk.   3 bags labeled Auro Thread (266X60MM);

lll.   8 bags labeled Auro Thread Polydixanone Absorbable Suture;

mmm. 1 bag of Botox 100 unit packing boxes;

nnn.   24 bags labeled Magik Thread;

ooo.   11 bags labeled Firmoso (233GX60MM);

ppp.   20 bags labeled Magik Thread;

qqq.   5 bags labeled Magik Thread Polydixanone Absorbable Suture (27GX38MM);

rrr.   2 bags labeled Magik Thread Polydixanone Absorbable Suture (29GX38MM);

sss.   1 bag labeled Aura Thread Polydixanone Absorbable Suture (29GX38MM);

Defendant's Initials _____       12

ttt.     3 bags labeled Auro Thread Polydixanone Absorbable Suture (26GX60MM);

uuu.     2 bags labeled Magik Thread Polydixanone Absorbable Suture (30GX25MM);

vvv.     3 bags labeled Magik Thread Polydixanone Absorbable Suture (26GX90MM);

www.     3 bags labeled Magik Thread Polydixanone Absorbable Suture (27GX50MM);

xxx.     2 bags labeled Magik Thread Polydixanone Absorbable Suture (25GX390MM);

yyy.     1 bag labeled Firmoso Poldloaxonone Suture (29GX38MM);

zzz.     Miscellaneous syringes;

aaaa.     6 bags labeled Magik Thread Polydixanone Absorbable Suture (29GX66MM);

bbbb.     12 bags labeled Magic Thread;

cccc.     4 bags labeled Magik Thread Polydixanone Absorbable Suture (29GX50MM);

dddd.     8 bags labeled Magik Thread; and

eeee.     11 bags labeled Firmoso (266X60MM).

**B.**     **Standard Terms and Conditions**

    1.     <u>Restitution, Special Assessment and Fine</u>

    The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offenses, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution

Defendant's Initials _____

13

to any victim of the offenses, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Defendant's Initials _____                        14

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five

Defendant's Initials _____        15

years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and

Defendant's Initials _____                    16

defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. **Defendant's Waiver of Right to Appeal the Sentence**

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. **Middle District of Florida Agreement**

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _____                    17

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant

Defendant's Initials _____            18

questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

Beginning on a date uncertain but at least as early as in or around July 2017, and continuing through on or about October 13, 2021, in the Middle District of Florida, KIMBERLY KIEHL ordered, purchased, received, and distributed misbranded and counterfeit drugs and medical devices that also lacked the required FDA approval. These products were imported unlawfully into the United States, and later sold by KIEHL online.

The Food and Drug Administration ("FDA") is the federal agency charged with the responsibility of protecting the health and safety of the American public by enforcing the Federal Food, Drug, and Cosmetic Act ("FDCA"). Among other responsibilities, the FDA enforces laws and regulations intended to ensure that

Defendant's Initials _____                    19

drugs and devices are safe and effective for their intended uses and bear labeling that contains true and accurate information.

*The Food and Drug Administration's Regulation of Medical Devices*

The FDCA defines a "device," in relevant part, as "an instrument, apparatus, implement, machine, contrivance, implant, *in vitro* reagent, or other similar or related article, including any component, part, or accessory, which is . . . intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or intended to affect the structure or function of the body of man or other animals, and which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of its primary intended purposes." 21 U.S.C. § 321(h)(1).

The FDCA defines a "counterfeit device" as a "device which, or the container, packaging, or labeling of which, without authorization, bears a trademark, trade name, or other identifying mark or imprint, or any likeness thereof, or is manufactured using a design, of a device manufacturer, processor, packer, or distributor other than the person or persons who in fact manufactured, processed, packed, or distributed such device and which thereby falsely purports or is represented to be the product of, or to have been packed or distributed by, such other device manufacturer, processor, packer, or distributor." 21 U.S.C. § 321(h)(2).

Defendant's Initials _____          20

Devices are classified into one of three categories, Class I (lowest risk), Class II (moderate risk), or Class III (highest risk). 21 U.S.C. § 360c. A device classified as Class III is required to have an FDA approved application for pre-market approval ("PMA") before the device may be distributed in interstate commerce. 21 U.S.C. § 360e(a)(2).

A device is adulterated if, among other things, it is a Class III device pursuant to 21 U.S.C. § 360c(f), and was required under 21 U.S.C. § 360e(a) to have in effect an approved PMA, and does not have such an approval in effect. 21 U.S.C. § 351(f).

A device is misbranded if its labeling is false or misleading in any particular. 21 U.S.C. § 352(a)(1). The FDCA defines "labeling" as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m).

*The Food and Drug Administration's Regulation of Drugs*

The FDCA, in relevant part, defines drugs as products that are "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals" (21 U.S.C. § 321(g)(1)(B)); and "articles (other than food) intended to affect the structure or any function of the body of man or other animals" (21 U.S.C. § 321(g)(1)(C)).

A "new drug" is defined as "[a]ny drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the composition of which is such that such drug is not generally recognized, among experts qualified by scientific

Defendant's Initials _____                    21

training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof." 21 U.S.C. § 321(p)(1).

Under the FDCA, a drug product that is a "new drug" cannot be lawfully introduced into interstate commerce unless and until a sponsor submits a new drug application for that drug product and FDA determines that the drug is safe and effective for its intended uses and approves that new drug application. 21 U.S.C. § 355(a).

Under the FDCA, a "counterfeit drug" means "a drug which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, or device, or any likeness thereof, of a drug manufacturer, processor, packer, or distributor other than the person or persons who in fact manufactured, processed, packed, or distributed such drug and which thereby falsely purports or is represented to be the product of, or to have been packed or distributed by, such other drug manufacturer, processor, packer or distributor." 21 U.S.C. § 321(g)(2).

Under the FDCA, a "prescription drug" is any drug intended for use in humans that, because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary for its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or is limited by an approved application under section 21 U.S.C. § 355 for use

Defendant's Initials _____        22

under the professional supervision of a practitioner licensed by law to administer such drug. 21 U.S.C. § 353(b)(1).

A drug is misbranded if its labeling is false or misleading in any particular. 21 U.S.C. § 352(a)(1).

*Relevant Prescription Drugs and Medical Devices*

Botulinum Toxin Type A is a highly potent toxin which can cause the disease botulism when present in human beings in a sufficient amount. In 1991, the FDA approved a biological products license for Botox, the brand name of a drug derived from Botulinum Toxin Type A and manufactured by Allergan, for the treatment of cervical dystonia in adults. In 2002, the FDA approved a supplement to Allergan's Botox license application for the treatment of glabellar lines, commonly referred to as wrinkles. Under this FDA approval, Allergan's Botulinum Toxin Type A product was marketed and labeled for this supplemental usage as "Botox Cosmetic." Both FDA approved licenses for Allergan Botox products limited them to use pursuant to a prescription from a licensed practitioner. Botulinum toxin-containing products intended to be used in these ways meet the definition of a prescription drug under the FDCA.

In or about 2019, Abbvie acquired Allergan. In the United States, Botox products are distributed by Abbvie. While Botox products may be purchased through other intermediary sources, all purchases are shipped from the Abbvie warehouse facility in Houston, Texas. This occurs to meet the strict temperature controls required for Botulinum Toxin-containing products. Through this process, Abbvie

Defendant's Initials _____        23

maintains records of all legitimate distributions of Botox products within the United States.

Dermal fillers,[1] such as products like Juvéderm, Sculptra, and Restylane, are Class III prescription devices and require pre-market approval by FDA.

*The Offense Conduct*

KIEHL was the registered agent and authorized member for Focus Beauty, LLC ("Focus Beauty"), a Florida company with its principal place of business in Lakeland, Florida. KIEHL operated the website www.http://www.focusisbeauty.come/focusisbeauty.com on behalf of Focus Beauty to market and offer for sale medical devices, drugs, and other products.

Between January 2020 and September 2021, several packages destined for KIEHL's address were seized by the Department of Homeland Security ("DHS"). Additionally, KIEHL received notices from the FDA and/or Customs and Border Protection about the violative nature of the products she was importing from China and other foreign countries.

On or about April 1, 2020, a DHL package shipped from China and destined for KIEHL's residence was intercepted. The package was addressed to the fake name of "Cathy Ryan" and the shipping documents identified the contents as

---

[1] Dermal fillers are injectable products that are intended to sit under the surface of the skin and plump or fill the space under the skin, and which do not achieve their primary intended purposes through chemical action within or on the body and which are not dependent upon being metabolized for the achievement of their primary intended purposes.

Defendant's Initials _____                    24

engraving pen kits and glass bottles. Special Agents from DHS Homeland Security Investigations ("HSI") conducted a border search of the package and determined that it contained 15 boxes marked "Restylane Injectable 1 x 1 ML;" eight boxes marked "Galderma Restylane Injectable Lyft Lidocaine 1 ML, The Perlane Collection, Injectable Gel with Lidocaine;" and seven boxes marked "Galderma Restylane Injectable Lidocaine 1 ML, Injectable Gel with Lidocaine."

Agents provided photographs of the boxes to the Galderma Group. On or about April 14, 2020, a Trademark and Counterfeit Director for the Galderma Group of companies, one of which is the exclusive manufacturer of "Restylane" medical devices, reviewed pictures of the products labeled as Restylane Lyft Lidocaine, and Restlyane Lidocaine seized on April 1, 2020. The Trademark and Counterfeit Director advised that the products were fake and placed at risk the safety and health of patients utilizing the counterfeit products.

Following this seizure, and others, on September 2, 2021, a Special Agent from FDA Office of Criminal Investigations ("OCI") acting in an undercover capacity ("UC2") purchased items through the website www.focusisbeauty.com and paid utilizing a Visa credit card. The purchase was identified as Order-4476. UC2 ordered the following products:

    a.    Intense Repair Serum, which bore the image of Botox, and was found in the section of the website titled: "Botox, Anesthetics, & Diluents;" and

    b.    Intense Repair Serum, which bore the image of a product titled Daewoong Boulinum Toxin Type A Nabota and was found in the section of the website titled: "Botox, Anesthetics, & Diluents."

Defendant's Initials _____    25

On or about September 17, 2021, agents retrieved the boxes shipped by KIEHL from the undercover mailbox. The box for Order-4476 contained five products marked as "Botox" with writing in the Turkish language that bore "Parti" number C5273C3 (the "Parti number") and an expiration date of "12 023," as well as a product marked as "Nabota BotulinumToxin Type A."

Images of the products were sent to an Associate Director of Global Product Protection ("ADGPP") for Abbvie.

On or about September 21, 2021, the ADGPP for Abbvie confirmed that Abbvie does not have any accounts or shipping records for Focus Beauty, LLC, KIEHL, or KIEHL's addresses. Additionally, the ADGPP noted the Botox products bearing the Parti number with an expiration date of "12 2023" were counterfeit versions of the Botox product manufactured for and only distributed in Turkey. The legitimate products for the Parti number were manufactured on or about June 20, 2018, and bore an expiration date of May 20, 2021.

On October 14, 2021, a search warrant was executed at KIEHL's residence in Lakeland, Florida. During the execution of the warrant, agents discovered hundreds of products violative of the FDCA that were imported into the United States from foreign countries. These products were discovered throughout the residence, including in a freezer among frozen food items, in a pantry among dry goods, and hidden behind a false wall. Among other items, agents seized the following:

Defendant's Initials _____          26

a.   20 boxes labeled "Dermal Injection Rejevnesse, shipped from Singapore;

b.   10 boxes labeled "Botox 100 Unite" with packaging;

c.   12 boxes labeled "Juvederm Voluma with Lidocaine;"

d.   11 boxes labeled "Aqua Secret Derm, Injectable Hyaluronic Acid;"

e.   16 boxes labeled "Restylane Lyft Lyodcaine;"

f.   9 boxes labeled "Revolax Fire with Lidocaine;"

g.   9 boxes labeled "Restylane Perlane;"

h.   13 boxes labeled "Restylane;"

i.   30 boxes labeled "Juvederm Ultra 4;"

j.   16 boxes labeled "Restylane Lyft Lidocaine;"

k.   56 boxes labeled "Godfaller Deep Composition," "Godfaller Wrinkle Fighter," "Godfaller Resurrection," "Godfaller Meso," and "Godfaller Derm;"

l.   64 bags labeled "Magik Thread;"

m.   31 bags labeled "Magik Thread Polydixanone Absorbable Suture;"

n.   1 bag of Botox 100 unit packing boxes;

o.   miscellaneous syringes and hypodermic needles;

p.   electronic devices;

q.   sales receipts;

r.   $47,773 in cash; and

s.   CBP seizure records.

Defendant's Initials _____

27

Images of the product labeled "Botox 100 Unite" were sent to an ADGPP for Abbvie who confirmed that products were not manufactured by or under the authorization of Abbvie or Allergan, and therefore were counterfeit.

KIEHL was present during the execution of the search warrant and agreed to speak with agents post-*Miranda*. KIEHL acknowledged ordering and receiving drugs and devices from foreign countries. KIEHL admitted to using fake recipient names on packages shipped to her from China, in an effort to avoid the seizure of the products, which were violative products. When using fake names did not stop the packages from being seized, KIEHL began using her son's address to receive the products, which were violative products. At least one of these packages, destined for KIEHL's son's address, was seized. The package contained counterfeit devices.

KIEHL acknowledged selling unapproved and counterfeit drugs and devices on the website, www.focusisbeauty.com, and shipping those products in interstate commerce to customers.

Shipping records obtained by DHS/HSI revealed approximately 176 foreign based packages were imported by KIEHL and shipped to KIEHL's residence between January 9, 2019, and September 19, 2021. Additionally, between approximately July 2017, and October 2021, KIEHL received approximately $341,218 for the sale of misbranded and counterfeit drugs and medical devices that lacked the required FDA approval.

Defendant's Initials _____    28

12. **Entire Agreement**

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. **Certification**

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 10ᵗʰ day of MARCH 2025.

SARA C. SWEENEY
Acting United States Attorney

_____
Kimberly Kiehl
Defendant

_____
Tiffany E. Fields
Assistant United States Attorney

_____
David Joffe, Esq.
Attorney for Defendant

_____
Carlton C. Gammons
Assistant United States Attorney
Chief, Economic Crimes Section

Defendant's Initials _____